UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

RONALD GARNER,

      Plaintiffs,

 -vs-

SKIERS PIER, INC.

      Defendant.

_____

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1.      This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2.      As to any supplemental, (State), claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3.      The Plaintiff in this lawsuit is Ronald Garner, ("Plaintiff" or "Mr. Garner"), who reside in White Lake, Michigan in Oakland County.

4.      The Defendant to this lawsuit is Skiers Pier, Inc., ("Skiers Pier"), which is a Michigan corporation doing business in Michigan and which by statute and condition of licensing, may be served through its resident agent, Paul J. Wolf, 2505 Dixie Highway Waterford Township, MI 48328.

5.      At all relevant times Skiers Pier -- in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which,

by written agreement is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable.

6.      Skiers Pier is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

7.      Skiers Pier is a creditor under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq and Regulation B.

## VENUE

8.      The transactions and occurrences which give rise to this action occurred in Oakland County.

9.      Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

10.     On Sunday February 21, 2016 Plaintiff went to the Detroit boat show to look at some boats.    He ended up speaking to "Brenden" and "Kyle" at the Skiers Pier display to ask about the 2015 Axis A22 boat.

11.     The three men discussed the boat, and had an extensive discussion about the warranty, features and pricing. Kyle noted that there was a $3,000 rebate on the purchase.

12.     During the above referenced conversation, Plaintiff was asked about his credit report, and he filled out a credit application.

13.     Plaintiff was told that he would be easily financed based on his credit score, and that he would receive the rebate "at the closing".

14.     On February 23, 2016 Plaintiff received a voice mail from Kyle to give him a call. When Plaintiff returned the call several hours later Kyle informed Plaintiff that the loan was

2

approved.

15.    Plaintiff asked Kyle what the monthly payments were and he said he didn't have the folder in front of him but they were in the $240 per month range. Kyle then called Plaintiff back a bit later and told me payments would be $426.08 at 6.99% for 240 months.

16.    Kyle called Plaintiff on February 26, 2016 and said he needed me to bring in down payment and Sign the final paper work. Plaintiff advised Kyle that he would be available on February 27, 2016.

17.    On February 27, 2016 Plaintiff saw Kyle at the boat show and Kyle advised Plaintiff that "Ashley" was waiting for him at the Waterford location. Plaintiff asked Kyle what he needed to bring and Kyle said "nothing at all." Plaintiff later went to Skiers Pier Waterford location and signed the contract and other documents.    The owner, Sara Wolf was on hand to advise Plaintiff that they had a deal, and she also signed the purchase agreement.

18.    On that same date, Plaintiff met with Ashley who went through the sales and finance documents provided Plaintiff with warranty information and the owner's manual. Plaintiff confirmed that he was financed through Michigan First Credit Union. Once Plaintiff left the location, he realized that Kyle never updated the paper work and never applied the $3,000 rebate referenced above.

19.    When confronted with the dealer's failure to provide the promised rebate, Kyle alleged that's not what the parties agreed to.    Not satisfied with this response Plaintiff contacted owner Joe Wolf who ultimately said "there is nothing wrong with your contract" and indicated that only a $1,000 rebate applied.

20.    Plaintiff then then reached out to the manufacturer who confirmed that the $3,000 rebate

3

applied to the subject boat. Upon request the manufacturer contacted Joe Wolf and confirmed the $3,000 rebate.

21.    Plaintiff then attempted to follow up with Joe Wolf to finalize the rebate issue, by making phone calls, however Mr. Wolf failed to respond.    On March 13, 2016 Plaintiff sent an email to Joe Wolf offering a compromise: Plaintiff would bring $1500 cash and his trade-in along with proof of income to finalize the deal. Mr. Wolf agreed to this proposal.

22.    Upon finally picking up his boat, Plaintiff found it to be dirty, soaking wet and without the drain plugs removed.    Plaintiff then thoroughly went through the entire boat to discover multiple problems and cover ups, which Plaintiff documented with photographs and video. Plaintiff returned to Skier Piers on (Date) and the service manager agreed to resolve all of the above issues.

23.    The very next day Joe Wolf called Plaintiff at 7 pm and says told Plaintiff that the financing fell through and that Plaintiff would have to bring the boat back. Plaintiff reasonably refused to do so.

24.    On March 26, 2016 Plaintiff made the first payment of $426.00 to the dealer, because he wasn't properly financed and wants to be sure to make his monthly payments.

25.    Since this time, Defendant representatives have called to harass Plaintiff and tell them they will "repossess" the boat, even though this action would be illegal and Plaintiff is the rightful and legal owner of the boat.

26.    Plaintiff provided a down payment relating to the purchase of the subject and agreed to make monthly finance payments to purchase the boat.

27.    Upon information and belief Plaintiff was not properly approved for financing by any

bank or other party by Defendant, but nonetheless took delivery of the above referenced boat.

28.     Upon information and belief, Plaintiff was not advised by Skiers Pier that other creditors (other than Michigan First Credit Union) were provided with Plaintiff's personal information. When Plaintiff took delivery of the boat he thought he was financed with Michigan First Credit Union, and he did not authorize Defendant to access or share his credit information with other creditors.

29.     When a dealer sells a boat and delivers it to a consumer without approval for financing or credit, this is known as a "Spot-Delivery" or a "yo-yo" sale.

30.     A "Spot Delivery" is illegal in Michigan, as outlined below.

31.     A "yo-yo" sale violates the Truth in Lending Act and is otherwise illegal as alleged below.

32.     Plaintiff was not aware of the consumer protection laws or financing requirements, and thus when he took delivery of the subject boat he thought he was properly financed and the deal was final.

33.     Skiers Pier has contacted Plaintiff several times to either get Plaintiff to return the boat, or in an attempt to get his approved for financing (which Defendant confirmed had already occurred), which constitutes a "spot-delivery", and which is illegal as outlined below.

34.     Moreover, Plaintiff was not provided with legal and adequate information regarding the terms of financing of the subject boat as mandated by the Truth-In-Lending Act, (TILA).

35.     Plaintiff has been confused and emotionally stressed by this fraudulent transaction. Plaintiff's honest efforts to work with the dealer and purchase a the boat has resulted in confusion and stress. As a result, Plaintiff has now been forced to retain counsel to protect his

rights.

36. Upon information and belief, Skiers Pier illegally continued to contact finance company's to obtain financing after Plaintiff took delivery of the subject boat.

37. Due to defendant's fraud, negligence, violation of statute and other violations of law outlined below, Plaintiffs have been forced to file this lawsuit and have been damaged as outlined below.

## COUNT I - TRUTH IN LENDING ACT

38. Plaintiff incorporates the preceding allegations by reference.

39. Defendant failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

40. Defendant failed to accurately disclose and itemized the amount financed in violation of 15   U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

41. As a consequence of failing to accurately state the actual finance charge, Defendant also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

42. Defendant failed to accurately disclose the applicable "APR" as required by 15   U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

43. Defendant was required to make the disclosures required by 16 U.S.C. § 1638 prior to consummating the sale of the boat.

44. Those disclosures were required to be made in writing, in form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

45. Defendant failed to make those disclosures in a timely fashion, or ever, in violation of 15 U.S.C. § 1638(a)(4).

46.     Defendant is liable to Plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

47.     Upon information and belief, Defendant also provided financial disclosures that were meaningless because the disclosures were subject to unilateral change by Defendant after the Plaintiff signed the Retail Installment Contract, ("RISC"), agreeing to the offered terms.

48.     Plaintiff asserts that the RISC terms presented to his were entirely illusory because, when he signed a RISC agreeing with the terms, Defendant considered each and every provision in the RISC to be non-final and subject to change at Defendant's whim.

49.     Upon information and belief, Defendant invariably violated TILA and Regulation Z in this sale by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the amount financed, the total of payments, the total sale price and every other term in the RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at defendant's sole and arbitrary discretion.

        WHEREFORE, Plaintiff is entitled to damages under TILA, for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT II - EQUAL CREDIT OPPORTUNITY ACT

50.     Plaintiff incorporates the preceding allegations by reference.

51.     At all relevant times Defendant -- in the ordinary course of its business -- operated a motor boat sales establishment which in the ordinary course of business sold motor boats to consumers like Plaintiff.

52.     Following the receipt of Plaintiff's complete application for credit by Plaintiffs,

Defendant was required to make a credit decision within 30 days.

53.    Based upon that credit application, Defendant first approved Plaintiff's for credit, and then revoked that credit by failing to secure third party financing and demanding that Plaintiff provide additional information and a co-signor after the sale and delivery of the subject boat.

54.    These actions constituted adverse action for purposes of the ECOA.

55.    Defendant provided false reasons or no reasons for the adverse actions.

56.    Defendant has no policies or procedures in place to comply with the ECOA and Regulation B.

57.    This refusal to provide an accurate adverse action notice constituted a violation of the ECOA, 15 U.S.C. § 1691 et seq. by Defendant.

58.    The initial credit approval by Defendant was false and they knew it to be false at the time it was issued.

59.    Plaintiff suffered damages by these violations of ECOA in an amount to be determined by a jury.

## COUNT III – MISREPRESENTATION/FRAUD

60.    Plaintiff incorporates the preceding allegations by reference.

61.    Defendant made material representations, written, verbally, and by omission, which are outlined above which were intended to induce the reliance of Plaintiff, including but not limited to:

    a.    Plaintiff would be timely and properly financed;

    b.    Any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion;

    c.    Plaintiff would be properly licensed and titled to drive the subject boat

8

legally;

d.       That Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report;

e.       That Plaintiff was accepted for final financing and that no other information or duties were required;

f.       That if Plaintiff made the down payment and signed the requested documents, the subject boat would be finally sold to him;

g.       All of the other misrepresentations and/or omissions outlined in the general allegations above.

62.     The material representations and/or omissions did induce the reasonable reliance of Plaintiff.

63.     Defendant made the material representations and/or omissions with actual knowledge of their falsity.

64.     Defendant made the material representations and/or omissions with reckless disregard to their truth or falsity.

65.     Defendant made the material representations and/or omissions even though it should have known that they were false or should have been disclosed.

66.     These actions constitute misrepresentations upon Plaintiff by Defendant.

67.     Plaintiff has suffered damages as a result of these misrepresentations, including emotional distress, stress, loss of sleep, embarrassment and humiliation.

## COUNT IV – FAIR CREDIT REPORTING ACT

68.     Plaintiff incorporates the preceding allegations by reference.

69.     The Fair Credit Reporting Act requires auto dealers that lend money to provide "risk based pricing notices" to consumers under 15 U.S.C. §1681m(h).

70.     The 2003 FACTA amendments to the FCRA require lenders to provide

"risk based pricing notices" or RBPNs to consumers per 15 U.S.C. Sec. 1681m(h).

71.     Under that provision, and under the FTC's related regulations (see 16 CFR Sec. 640.1 et

seq.; 12 CFR Sec. 222.70 et seq.) any lender who, after consulting a credit report and a credit

score, offers a consumer anything less than the most favorable terms possible, must give the

consumer an RBPN that discloses what its issues with the report were and what the credit score

was.

72.     When an auto dealer, like Skiers Pier contacts more than one lender to see if they will

offer the consumer a loan, and then sets the consumer up with a loan from one of them, the FTC

regulations require the auto dealer, and not the lenders, to provide the consumer with an RBPN.

73.     The rationale behind this rule is to insure that a consumer, like Plaintiff, in this kind of

situation will get an RBPN from someone he recognizes (the dealer) as opposed to multiple

notices from entities that he doesn't recognize (the behind-the-scenes lenders).   Also, it prevents

lenders who didn't want to give consumers RBPNs from routing their loans through dealers as a

way of avoiding the RBPN requirement.   (See *National Automobile Dealers Association v.*

*Federal Trade Commission*, 864 F. Supp. 2d 65, at 78-80).

74.     Skiers Pier contacted more than one lender regarding Plaintiff and unlawfully failed to

provide Plaintiff with the RBPN.

75.     This failure to provide a risk based pricing notice constituted a willful violation of the

FCRA, 15 U.S.C. § 1681n.

76.     Plaintiff suffered statutory and actual damages as the result of defendant's failed FCRA

notice, including emotional distress, loss of sleep, stress, mental anguish, along with attorney

fees and costs.

77.    WHEREFORE, Plaintiff is entitled to damages as authorized under the Fair Credit Reporting Act for both willful and negligent violations.

## COUNT V – BREACH OF CONTRACT

78.    Plaintiff incorporates the preceding allegations by reference.

79.    The parties agreed that if Plaintiff made a down payment and committed himself to executing a purchase and finance contract which bound him to further payments and other legal obligations, that Skiers Pier would deliver boat and title, with appropriate financing.

80.    The failure of Skiers Pier to deliver conforming financing constitutes a material breach of contract.

81.    The parties agreed that Plaintiff would be timely and properly financed.

82.    The parties agreed that any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion.

83.    The parties agreed that Plaintiff would be properly licensed and titled to drive the subject boat legally.

84.    The parties agreed that Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report.

85.    The parties agreed that Plaintiff was accepted for final financing and that no other information or duties were required.

86.    The parties agreed that if Plaintiff made the down payment and signed the requested documents, the subject boat would be finally sold to him.

87.    Skiers Pier violated all of the above agreements between the parties.

88.    Plaintiff has suffered damages as a result of this breach of contract, as outlined in this Complaint.

11

89.    Plaintiff suffered damages and continues to suffer damages as a result of this breach of contract, including but not limited to constructive repossession, loss of down payment, in addition to emotional distress, attorney fees and court costs.

## REQUEST FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief

1.    Assume jurisdiction over this case including all supplemental claims.

2.    Award actual damages.

3.    Award statutory and punitive damages.

4.    Award statutory costs and attorney fees.

5.    Award damages for emotional distress and mental anguish.

6.    Award any other relief which is appropriate fair and just.

7.    And, award equitable/declaratory relief including an Order compelling Defendant to return Plaintiffs' down payment and trade-in, or provide financing as well as retract any derogatory credit reporting regarding either Plaintiff, and refrain from any further use of Plaintiffs personal information or credit reports.


Respectfully Submitted,


**/s/ Adam S. Alexander**
ADAM S. ALEXANDER (P53584)
ANDREW R. MIKOS
Attorney for Plaintiffs
17200 W. Ten Mile Rd., Ste. 200
Southfield, MI 48075
adalesq@gmail.com
April 5, 2016                        (248) 246-6353

12